UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------- x

UNITED STATES OF AMERICA, :

: **MEMORANDUM AND ORDER**

-against- :

: 08-CR-792 (DLI)(RLM)

PIERRE SALIBA, :

:

Defendant. :

---------------------------------------------------------- x

**DORA L. IRIZARRY, United States District Judge:**

Defendant Pierre Fouad Saliba is charged with international parental kidnapping, in violation of 18 U.S.C. §§ 1204 and 3551 *et seq.* Defendant moves to dismiss the indictment pursuant to Fed. R. Crim. P. 12(b)(3)(A)–(B) and Fed. R. Crim. P. 48(b). In the alternative, defendant moves for an order compelling numerous governmental disclosures in anticipation of the trial scheduled for March 29, 2010.[1] For the reasons set forth below, the motion to dismiss the indictment is denied, and the motion to compel disclosure is also denied in its entirety.

I. **Background**

Defendant is a naturalized U.S. citizen who came to this country from his native Lebanon in October 1997. On June 28, 1998, while living in Brooklyn, New York, he and his then-wife (the "mother") had a child. In October 1998, the mother moved with the child to Canada, returning to the United States approximately one year later. On or about February 20, 2000, defendant took the child, then twenty months old, to Lebanon.

On March 9, 2000, a warrant for defendant's arrest was issued by the Honorable Roanne L. Mann, United States Magistrate Judge of this district. (*See* Docket Entry No. 1.) On April 26, 2000, the mother was granted sole custody of the child by the Family Court of the State of New

---

[1] The court will address the parties' joint motion to adjourn the trial at the conference scheduled for February 25, 2010. (*See* Docket Entry No. 42.)

York. Defendant disputes the Family Court's ruling on the ground that he was never "served with any papers within the Court's jurisdiction," and further claims that the mother made misrepresentations to the Family Court. (Aff. in Supp. of Mot. to Dismiss ("Aff.") 5.) Over the course of the next eight years, the defendant lived in Lebanon with the child; sometime during this period, the mother obtained an *ex parte* divorce from defendant in Canada.

On October 26, 2008, defendant was arrested pursuant to the 2000 warrant at John F. Kennedy International Airport in Queens, New York. Defendant was indicted by a grand jury on November 7, 2008 on one count of international parental kidnapping. The indictment charges, in relevant part, that, between February 2000 and his arrest, defendant "knowingly and intentionally remove[d] a child . . . from the United States and retained said child, who had been in the United States, outside the United States with intent to obstruct the lawful exercise of the parental rights of said child's mother." (Indictment.)

On December 4, 2009, defendant filed the instant motion, requesting dismissal of the indictment on several grounds. First, he contends that the International Parental Kidnapping Crime Act ("IPKCA"), 18 U.S.C. § 1204, is unconstitutionally vague. (Aff. 6–9.) Second, defendant argues that this court lacks subject matter jurisdiction. (*Id.* at 9.) Finally, he contends that the timing of the indictment violates the Speedy Trial Act, 18 U.S.C. § 3161(b), as well as the applicable statute of limitations. (*See* Mot. to Dismiss 1; Def.'s Reply 4–5.)

In the alternative, defendant moves to compel a number of governmental disclosures. First, he requests "all exculpatory evidence and impeachment material as it becomes available, pursuant to *Brady v. Maryland*, 373 U.S. 73 (1963), *Giglio v. United States*, 405 U.S. 150 (1972), and their progeny." (Mot. to Dismiss 1.) Second, defendant requests disclosure of the grand jury minutes, pursuant to Fed. R. Crim. P. 6(e)(3). (*Id.*) Finally, defendant requests an

order compelling twenty-two specific disclosures by the government, pursuant to Fed. R. Crim. P. 12(b)(3)(E) and Fed. R. Crim. P. 16. (*Id.* at 1–3.)

## II.    Discussion

### A.    Dismissal of the Indictment

#### 1.    Legal Standard

"A motion to dismiss an indictment must satisfy a high standard." *U.S. v. Brooks*, 2009 WL 3644122, at *2 (E.D.N.Y. Oct. 27, 2009) (citations and internal quotation marks omitted). This is because "[a]n indictment . . . need not be perfect, and common sense and reason are more important than technicalities." *United States v. De Le Pava*, 268 F.3d 157, 162 (2d Cir. 2001) (citation omitted). A court must "accept[] the facts alleged in the indictment as true and determine[] only whether the indictment is 'valid on its face.'" *Id.* (quoting *Costello v. United States*, 350 U.S. 359, 363 (1956)).

The United States Supreme Court has held that "an indictment is sufficient if it, first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." *Hamling v. United States*, 418 U.S. 87, 117–18 (1974). "It is generally sufficient that an indictment set forth the offense in the words of the statute itself, as long as [they] . . . fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offence intended to be punished." *Id.* (citations and internal quotations omitted). "Essentially, the indictment must . . . be a plain, concise, and definite written statement of the essential facts constituting the offense charged." *Brooks*, 2009 WL 3644122, at *2 (citing FED. R. CRIM. P. 7(c)(1)).

### 2. Vagueness

In order to survive a vagueness challenge, a penal statute must "define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." *Kolender v. Lawson*, 461 U.S. 352, 357 (1983). Defendant challenges the indictment on the ground that the statute he is charged with violating, 18 U.S.C. § 1204, does not meet this requirement. Specifically, he argues that the phrase "child who has been in the United States" is insufficiently defined. (Aff. 7.)

In *United States v. Amer*, the Second Circuit Court of Appeals upheld the IPKCA against just such a challenge. *See* 110 F.3d 873, 877–79 (2d Cir. 1997). Nevertheless, defendant contends that a narrow exception—possibly carved out by dicta in *Amer*—is applicable here. *See id.* at 878 ("[T]here might be room for argument as to whether *foreign children* who were merely visiting the United States on a week-long vacation would be protected by the Act . . . .") (emphasis added). This contention is easily rejected. First, it is undisputed that the child is a natural-born U.S. citizen. The fact that she may also hold Canadian citizenship certainly does not make her a "foreign child" in the context of the Second Circuit's hypothetical scenario. *See Perkins v. Elg*, 307 U.S. 325, 329 (1939) ("[A]t birth she became a citizen of the United States . . . citizenship must be deemed to continue unless she has been deprived of it through the operation of a treaty or congressional enactment or by her voluntary action . . . ."). Furthermore, "accepting the facts alleged in the indictment as true," the child was living in Brooklyn, New York at the time of her kidnapping. *See De Le Pava*, 268 F.3d at 162. That she and her mother might also have had a Canadian residence does not place her within the narrow exception

possibly created by the Second Circuit for the children of parents "merely visiting" the United States. *See Amer*, 110 F.3d at 878.

In sum, the Second Circuit has already upheld the IPKCA against a vagueness challenge, and this court sees no room to distinguish the case at bar. Because the indictment "contains the elements of the offense charged and fairly informs [] defendant of the charge against which he must defend, and . . . enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense," it is sufficient to survive the instant motion.[2]

### 3.    Speedy Trial

Federal Rule of Criminal Procedure 48 empowers a court to dismiss an indictment for "unnecessary delay" in the presenting of a charge to a grand jury, the filing an information against a defendant, or the bringing a defendant to trial. Furthermore, the Speedy Trial Act "mandates the dismissal of charges against a defendant who is not indicted, arraigned, or brought to trial within periods of time set forth in the statute." *United States v. Oberoi*, 547 F.3d 436, 443 (2d Cir. 2008) (citations and internal quotation marks omitted). Specifically, "[n]o more than 30 days can pass between arrest and indictment . . . ." *Id.* (citing 18 U.S.C. § 3161(b)).

Here, it is uncontested that defendant was arrested on October 26, 2008 and indicted on November 7, 2008, twelve days later. Thus, there has been no violation of § 3161(b). Defendant nevertheless argues that his indictment was untimely on the ground that "the *Complaint* was filed on March 9, 2000, and the Indictment was not filed until . . . nearly nine years later." (Aff. 10 (emphasis added).) Given the statute's clear language, however, this argument is unavailing. *See* 18 U.S.C.A. § 3161(b) (West 2008) ("indictment . . . shall be filed within thirty days from the date on which such individual was *arrested* or *served* with a summons") (emphasis added).

---

[2] *See Hamling*, 418 U.S. at 117–18. The court need not reach defendant's jurisdictional argument as it is premised on his vagueness challenge, which the court rejects as set forth above.

Furthermore, the court notes that defendant apparently chose to remain outside U.S. jurisdiction for nearly eight years, in "a country that does not extradite IPKCA violators to the United States," despite being aware of the pending warrant for his arrest. (Resp. 5.) As such, the court cannot find that any delay in the criminal proceedings was "unnecessary."[3]

### 4.    Statute of Limitations

Unless otherwise provided, the federal statute of limitations period for cases involving non-capital crimes is five years. *See* 18 U.S.C.A. § 3282(a) (West 2003). "Where the crime charged constitutes a 'continuing offense,' the crime is not completed—and therefore the statute of limitations does not begin to run—until 'the conduct has run its course.'" *United States v. Motz*, 652 F. Supp. 2d 284, 293 (E.D.N.Y. 2009) (quoting *United States v. Eppolito*, 543 F.3d 25, 46 (2d Cir. 2008)). It is well-established that kidnapping is one such "continuing offense." *See Motz*, 652 F. Supp. 2d at 293 (citing *United States v. Rodriguez-Moreno*, 526 U.S. 275, 281–82 (1999)).

Defendant's final ground for dismissal of the indictment is the contention that "the nearly nine year [sic] delay in the filing of the instant indictment violated 18 U.S.C. § 3282." (Def.'s Reply 4–5.) However, the government alleges that defendant kidnapped the child for the entire period between February 2000 and his arrest in 2008. (*See* Indictment.) Assuming this to be true for the purpose of the instant motion, and given that kidnapping is a continuing offense, the 2008 indictment was clearly filed within the required five-year period. *See De Le Pava*, 268 F.3d at

---

[3] The same reasoning defeats any constitutional, as opposed to statutory, speedy trial issue defendant may have raised by implication. *See United States v. Vanhoesen*, 2010 WL 580017, at *3 (2d Cir. Feb. 18, 2010) (citing *Barker v. Wingo*, 407 U.S. 514, 530–33 (1972) for the proposition that "the reason for the delay" is a factor a district court may consider "[i]n assessing whether a defendant's constitutional . . . speedy trial right has been compromised").

162; *Motz*, 652 F. Supp. 2d at 293. Thus, dismissal of the indictment on statute of limitations grounds is unwarranted.

## B. *Brady/Giglio* Disclosure

"[T]he Government has a constitutional duty to disclose favorable evidence to the accused where such evidence is 'material' either to guilt or to punishment. Favorable evidence includes not only evidence that tends to exculpate the accused, but also evidence that is useful to impeach the credibility of a government witness." *United States v. Coppa*, 267 F.3d 132, 139 (2d Cir. 2001) (citing *Giglio v. United States*, 405 U.S. 150, 154 (1972); *Brady v. Maryland*, 373 U.S. 83, 87 (1963)). "[A] prosecutor must disclose evidence if, without such disclosure, a reasonable probability will exist that the outcome of a trial in which the evidence had been disclosed would have been different." *Coppa*, 267 F.3d at 142.

With respect to the timing of disclosure, "as long as a defendant possesses *Brady* evidence in time for its effective use, the government has not deprived the defendant of due process of law simply because it did not produce the evidence sooner." *Coppa*, 267 F.3d at 144. "[T]he time required for the effective use of a particular item of evidence will depend on the materiality of that evidence . . . as well as the particular circumstances of the case." *Id.* at 132. Given the difficulty in determining materiality prior to trial, the Second Circuit has declined to specify a precise meaning for the phrase "in time for effective use." *See United States v. Rodriguez*, 496 F.3d 221, 227–28 (2d Cir. 2007). "[I]n some cases, mid-trial disclosure may be adequate where defense counsel, before the start of cross-examination, is given the opportunity to cross-examine the witness outside the presence of the jury." *Id.* at 228 n.6; *see also United States v. Rivera*, 60 F. App'x 854, 858 (2d Cir. 2003) (finding no *Brady* violation where exculpatory information was not revealed to defendant until government witness's direct

testimony). A district court has the discretion to order *Brady/Giglio* disclosure at any time as a matter of "sound case management." *See United States v. Nogbou*, 2007 WL 4165683, at *3–4 (S.D.N.Y. Nov. 19, 2007); *United States v. Giffen*, 379 F. Supp. 2d 337, 347 (S.D.N.Y. 2004).

Here, defendant requests that the government "provide all exculpatory evidence and impeachment material as it becomes available." (Mot. to Dismiss 1.) The government responds that it is "unaware of any *Brady* material but will immediately produce such material should any be discovered." (Resp. 5–6.) The court is satisfied with this proffer.

Defendant also contends that, "if false representations were made to any court [by the mother], this should be immediately disclosed by the government." (Aff. 12.) The government responds that it will disclose *Giglio* material "shortly before trial in keeping with standard practice in the District." (Resp. 6.) Given that the trial is over a month away, the court declines to order *Giglio* disclosure at this juncture. *See Giffen*, 379 F. Supp. 2d at 347. However, the court notes that, to the extent the mother is the government's primary witness against defendant, the materiality of any evidence impeaching her credibility would likely be substantial. *See Coppa*, 267 F.3d at 132. The government is advised to take this into account with respect to the timing of its *Giglio* disclosures.

### C.    Grand Jury Minutes

Federal Rule of Criminal Procedure 6(e)(3)(E)(ii) permits a court to authorize disclosure of a grand jury matter "at the request of a defendant who shows that a ground may exist to dismiss the indictment because of a matter that occurred before the grand jury." However, such "extraordinary relief" generally requires "specific factual allegations of government misconduct." *United States v. Brown*, 1995 WL 236718, at *6 (S.D.N.Y. Apr. 24, 1995); *see also United States v. Torres*, 901 F.2d 205, 233 (2d Cir. 1990) (affirming district court decision to not

inspect grand jury minutes in part because of "the absence of any claims of prosecutorial misconduct or perjury with respect to the grand jury proceedings"). "Speculation and surmise as to what occurred before the grand jury is not a substitute for fact." *Brown*, 1995 WL 236718, at *6 (citations and internal quotation marks omitted).

Defendant contends that, "as would be revealed by . . . inspection of the Grand Jury minutes, it is likely that the residence of [the child and her mother] was not disclosed as truly having been in Canada, rather than the United States, in which case the United States would not have jurisdiction, thereby rendering the indictment defective." (Def.'s Reply 3.) Defendant further claims that the government "was alerted to [the possibility that the mother lied] long ago, and apparently took no steps to investigate . . . ." (*Id.*) With respect to defendant's first claim, the premise is incorrect: nothing in the IPKCA conditions jurisdiction on an alleged victim or parent having their sole residence within the United States. *See generally* 18 U.S.C.A. § 1204 (West 2003). As discussed in Part II.A.2, *supra*, the government's allegations are sufficient to defeat a motion for dismissal. Thus, the court's inspection of the grand jury minutes in order to consider once again such a dismissal is unwarranted. Defendant's other claim—that the government *might* have failed to investigate a *possible* failure to disclose a non-material fact—is similarly insufficient to overcome "[t]he presumption of regularity which attaches to Grand Jury proceedings." *Hamling v. United States*, 418 U.S. 87, 139 n.23 (1974). In sum, defendant has failed to make the specific factual allegations of government misconduct necessary to justify disclosure of the grand jury minutes. The court, therefore, declines to issue such an order. *See Torres*, 901 F.2d at 233.

**D.     Additional Discovery Requests**

Federal Rule of Criminal Procedure 16(a)(1) outlines the prosecutorial information subject to disclosure during criminal discovery. Such information includes, *inter alia*, defendant's relevant oral, written, and recorded statements, and any documents and objects intended for use in the government's case-in-chief. *See generally* FED. R. CRIM. P. 16(a)(1). Pursuant to this rule, defendant makes twenty-two (22) specific discovery requests:

1. What specific alleged statements of the defendant the government intends to use at trial.

2. The date, time, place of said statements and to whom made.

3. If said statements have already been provided to defendant, identify same, and if provided in redacted form, provide in complete un-redacted form.

4. If questioning took place in a language other than English, provide copies of original notes or other means or recording in said language, and include English translations or transcripts of same.

5. If questioning took place in English, provide full copies of un-redacted original notes or other forms of recording, and transcripts of same.

6. If the government intends to utilize any property seized from defendant, specify each item exactly, and state when, where and by whom obtained.

7. Regarding any questioning of defendant outside of the United States at any time, state at whose request such questioning took place, and provide any communications regarding such requests, particularly if same would reveal that such questioning occurred by persons acting as agents of the U.S. Government.

8. State how many cases involving the specific charges herein were prosecuted in the EDNY from the year 2000 to the present.

9. Set forth the specific criteria used by the U.S. Attorney's Office for the EDNY in deciding whether to prosecute such cases.

10. State whether there were any such cases where the exact location of the child was immediately known by all parties.

11. Set forth whether any such cases involved the child's removal to a country where the child and its parents were all citizens.

12. Set forth whether any such cases involved a situation where a spouse was immediately expected and able to travel and join the child, and . . . chose not to.

13. Set forth who, other than [the mother], immediately contacted the government about this matter, which resulted in an arrest warrant being issued against Mr. Saliba.

14. Set forth the particular relationship such person had with any governmental agency such as the FBI, or any of its agents.

15. Provide copies of any complaints or reports made by [the mother], or anyone else acting on her behalf, to a U.S. governmental agency, such as the FBI, including dates, by whom, and to whom made, regarding the instant charges.

16. Provide information relating to any criminal records of [the mother]'s brothers in any country, such as Canada. Specifically, set forth any information relating to drug dealing by either or both of them.

17. Provide copies of all legal papers, whether in the U.S., Canada, or Lebanon, relating to legal action brought by [the mother] in either a custody or divorce proceeding, or both.

18. State in detail what false representations were made by [the mother] in any such proceedings or documents.

19. Disclose whether an informant was utilized in this case, and state what actions said informant took on behalf of the government and whether said informant was paid. If so, set forth details and amounts.

20. Disclose whether any agent of the government told or suggested to [the mother] that she not speak to anyone, such as defendant's attorney, other than a government representative.

21. State whether, during the relevant time period, especially since October 1998 and thereafter, [the mother] had a paramour in Canada, where she took [the child] from the U.S., and while still legally married to defendant. If so, state when such intimate relationship commenced, the name of said individual, and whether he is the person whom [the mother] subsequently married.

22. Provide a copy of the arrest warrant pursuant to which Mr. Saliba was arrested.

(Mot. to Dismiss 1–3.) The government opposes most of these requests on various grounds, as discussed in more detail below. The court accepts the government's proffer that it has already complied with requests numbered 6, 17, 18, and 22. (*See* Resp. 7–9. *See generally* Docket Entry No. 11, 15 (providing discovery materials).) Accordingly, these requests are denied as moot. Furthermore, the court accepts the government's response to defendant's twentieth request. (Resp. 9 ("No . . . instructions [to avoid speaking with defendant's representatives] were given to the [alleged] victim['s] mother.").)

Regarding defendant's first request, the Federal Rules of Criminal Procedure require disclosure of any records containing a defendant's relevant written or recorded statement. *See* FED. R. CRIM. P. 16(a)(1)(B). In contrast, documents that do not contain a defendant's statement need only be disclosed if the government intends to use them in its case-in-chief. *See* FED. R. CRIM. P. 16(a)(1)(E). The distinction is notable because once disclosure under the broader-

reaching Rule 16(a)(1)(B) has been made, nothing in the Rules requires the government to take the further step of identifying *which* of these statements it intends to use at trial. Indeed, such a requirement would transform the "liberal discovery" envisioned by the Rules into a mechanism for "provid[ing] the defendant with access to the entirety of the government's case against him." *United States v. Percevault*, 490 F.2d 126, 130 (2d Cir. 1974). Accordingly, defendant's first request is denied.

With respect to 2–5 and 7, the government maintains that the disclosure of its agents' reports, "properly redacted to limit the disclosure to the *defendant's* statements," satisfies Rule 16(a)(1)(B)(ii). (Resp. 7 (emphasis added).) Because of the clear language of the Rule, the court agrees. *See* FED. R. CRIM. P. 16(a)(1)(B)(ii) (requiring disclosure of "the *portion* of any written record containing the substance of any relevant oral statement made [by] . . . the *defendant* . . . in response to interrogation . . . .") (emphasis added). Accordingly, these requests are denied.

Defendant's discovery requests numbered 8–12 appear to be directed towards a possible selective prosecution argument, although such an argument has not been made. A defendant seeking such discovery must satisfy a "rigorous" standard. *United States v. Alameh*, 341 F.3d 167, 173 (2d Cir. 2003) (quoting *United States v. Armstrong*, 517 U.S. 456, 468 (1996)). Specifically, a defendant must "produce some evidence of discriminatory effect and intent" on the part of the government. *Alameh*, 341 F.3d at 173 (citations and internal quotation marks omitted). The government argues that in the absence of such a showing, defendant is not entitled to the requested discovery. (*See* Resp. 8.) The court agrees. Accordingly, defendant's requests numbered 8–12 are denied.

Regarding defendant's requests numbered 13–15 and 19, the government argues that it is not required to disclose the identity of its witnesses or informants at this time pursuant to 18

U.S.C. § 3500. (Resp. 8–9.) For the reasons set forth in Part II.B, *supra*, the court agrees. The court reminds the government that, to the extent any of these persons may possess exculpatory information as defined by *Brady/Giglio*, their identities must be disclosed in time for the defendant to make "effective use" of such material. *See Coppa*, 267 F.3d at 144. Furthermore, earlier disclosure of the government's witnesses might yet be appropriate if defendant makes a "*specific* showing" that such disclosure is "both material to the preparation of [the] defense and reasonable in light of the circumstances . . . ." *United States v. Cannone*, 528 F.2d 296, 301 (2d Cir. 1975). Such a showing has not been made by the defendant at this time.

Defendant's basis for his sixteenth request is a belief that the recent death of the mother's brother "may have been related to drug dealing. This brother was part of the family that [the mother] had removed the [child] from the U.S. to live with in Canada." (Aff. 14.) The court agrees with the government that such a request is irrelevant to the charge filed against the defendant.

Finally, defendant justifies his twenty-first request on the ground that evidence of the mother being "involved with a man in Canada while living there with [the child]" is relevant to refuting the claim that he intended to obstruct the mother's parental rights. (*Id*.) The court disagrees. It is undisputed that defendant and the mother shared joint custody over the child at the time of the alleged kidnapping, and that the mother obtained an order for sole custody shortly thereafter in New York Family Court. While defendant may dispute the jurisdiction of the Family Court, and may certainly seek to establish at trial that he lacked the requisite intent to violate 18 U.S.C. § 1204, he has not indicated how evidence of the mother's personal relationships is relevant to such an attempt. Accordingly, this final discovery request is denied.

**III.** **Conclusion**

For the foregoing reasons, the motion to dismiss the indictment is denied. Defendant's motion to compel additional disclosure by the government is denied in its entirety.

SO ORDERED.

Dated: Brooklyn, New York
      February 24, 2010

_____/s/_____
                   DORA L. IRIZARRY
             United States District Judge