| UNITED STATES DISTRICT COURT | |
|---|---|
| EASTERN DISTRICT OF NEW YORK | |
| ------------------------------------------------------------- x | |
| UNITED STATES OF AMERICA, | **MEMORANDUM AND ORDER ADOPTING IN PART AND MODIFYING IN PART REPORT AND RECOMMENDATION** |
| -against- | |
| PIERRE SALIBA, | 08-CR-792 (DLI)(RML) |
| Defendant. | |
| ------------------------------------------------------------- X | |

**DORA L. IRIZARRY, U.S. District Judge:**

On April 8, 2010, a jury convicted Pierre Saliba ("Defendant"), after trial, of international parental kidnapping in violation of 18 U.S.C. § 1204(a). On November 17, 2010, the Court sentenced Defendant to a three-year term of imprisonment, followed by a one-year term of supervised release. (*See* Judgment of Conviction ("J."), Dkt. Entry No. 111.) With respect to Defendant's term of supervised release, the Court imposed standard conditions as well as three special conditions. (J. at 3-4.) On April 24, 2012, Defendant was charged with violating one of the special conditions of supervised release. (*See generally* Government's Motion to Revoke Supervised Release ("Gov't Mot."), Dkt. Entry No. 115; Violation of Supervised Release Report ("VOSR Rpt."), Dkt. Entry No. 129.) The Court referred the matter to United States Magistrate Judge Robert M. Levy for a hearing and to issue a Report and Recommendation ("R & R").

On August 15, 2012, the magistrate judge conducted a hearing on the government's motion. (*See* Aug. 15, 2012 Hearing Transcript ("Tr.").) On November 6, 2012, the magistrate judge issued an R & R, recommending that the Court find Defendant not guilty of the violation and deny the government's motion. (*See generally* R & R, Dkt. Entry No. 144.) The government submitted timely objections to the R & R (*see* Government's Objections to R&R

("Gov't Obj."), Dkt. Entry No. 147), which Defendant opposed (*see* Defendant's Memorandum of Law in Opposition to Gov't Obj. ("Def.'s Opp'n"), Dkt. Entry No. 150).

Having reviewed the R & R and the government's timely objections thereto, the Court adopts in part and modifies in part the recommendations contained in the R & R, for the reasons set forth below. Accordingly, Defendant's supervised release is revoked.

## BACKGROUND

**A.     Procedural History**

On February 20, 2000, Defendant abducted his then twenty-month-old daughter[1] from her home in Brooklyn, New York, to Lebanon, without the consent of her mother (the "victim-mother"). The victim-mother secured orders from the Family Court of the State of New York, and an equivalent Canadian court, granting her sole custody of the victim-daughter. On March 9, 2000, this Court issued a warrant for Defendant's arrest for international parental kidnapping in violation of 18 U.S.C. § 1204(a). On October 26, 2008, more than eight years after Defendant abducted his daughter, Defendant re-entered the United States, on unrelated business, and immediately was arrested. A trial was held on the charge beginning on March 30, 2010, and on April 8, 2010, the jury found Defendant guilty of international parental kidnapping.

A sentencing hearing was held on November 18, 2010. After hearing from the parties, including a victim-impact statement from the victim-mother, the Court imposed a sentence consisting of a three-year term of imprisonment, followed by a one-year term of supervised release. (J. at 2-3.) With respect to supervised release, the Court imposed standard conditions and three special conditions. (*Id*. at 3-4.) It is the third special condition that is at issue. The third special condition specifies that:

---

[1]     To protect her anonymity, all references to Defendant's daughter will be to the initial of her first name, "P.," or to the "victim-daughter."

> [T]he defendant shall facilitate the immediate and safe return of [P.] to the United States, whether or not [P.] expresses a desire to return to the United States. In connection with facilitating the return, the defendant shall authorize a member of his family to bring the child to an airport to be boarded on an American or any other airplane to the United States. Any fees for the return trip to the United States are to be paid either by the defendant or, if the defendant is unable to afford the fees, by the government. In addition, the defendant is required, if needed[,] to communicate with any Lebanese official or court and to express his willingness that the child return to the United States. The defendant is prohibited from interfering in any way, shape, or form, including by making statements or inducement to any other family member or to [P.], or to in any way cause her to resist or object to being returned to the United States. The defendant shall not interfere in any way, shape, or form with any party involved in facilitating [P.'s] return to the United States.

(J. at 4.) At sentencing, the Court explained that this particular condition was designed to "hopefully deter [] Mr. Saliba from continuing to unlawfully retain the child after his release from prison." (Nov. 17, 2010 Sentencing Hearing Transcript ("Sentencing Tr.") at 80.)

On May 20, 2011, prior to Defendant's scheduled release, the government moved for revocation of his supervised release. (*See generally* Gov't Mot.) The government contended that "[D]efendant has not indicated any intent to comply with one of the Court's imposed special conditions of supervised release, specially, that the [D]efendant 'shall facilitate the immediate and safe return of [P.] to the United States whether or not [P.] expresses a desire to return to the United States.'" (Gov't Mot. at 1 (*quoting* J. at 4).) The government elaborated that the entire third condition was at issue, and indicated that, "[D]efendant has not indicated that he intends to comply with this condition." (*Id*. at 3.)

On June 7, 2011, the parties appeared before the Court for a status conference and reported that they had reached an agreement with respect to the special condition. Defendant signed an affirmation authorizing P.'s maternal grandmother to obtain a U.S. passport for P.,

directing his family in Lebanon to release P. to the custody of her maternal grandmother, authorizing P. to return to the United States, prohibiting his family from interfering with her return, and requesting that the Lebanese government assist in P.'s return to the United States if necessary. (*See* Saliba Affirmation filed under Seal ("Affirm."), Dkt. Entry No. 120). At that time, he was released under home confinement and began his term of supervised release. On June 23, 2011, he brought an Arabic translation of the affirmation to the Lebanese Embassy. (Tr. 50-51.)

On April 24, 2012, the United States Probation Department ("Probation") issued a Violation of Supervised Release Report ("VOSR Rpt.") violation memorandum, charging Defendant with violating the third special condition. (Dkt. Entry No. 129.) On May 1, 2012, the Court issued a Summons for Defendant to appear in Court to respond to Probation's recommendation that the Court revoke his supervised release. (Summons, Dkt. Entry No. 130.) The Summons stated that the sentence included special conditions, one of which was that Defendant "shall facilitate the immediate and safe return of [P.] to the United States, whether or not [P.] expresses a desire to [] return to the United States." (*Id*. at 1.) With respect to the "Nature of Noncompliance," the Summons stated that "[t]he offender violated the following Court ordered special condition of supervision: '*(the offender) shall facilitate the immediate and safe return of [P.] to the United States.*'" (*Id*. (emphasis in original); *see also* VOSR Rpt. at 5-6.) On May 22, 2012, the Court referred the violation for an R & R.

**B.    Violation Hearing**

On August 15, 2012, the magistrate judge presided over a hearing, at which three witnesses testified: Defendant, U.S. Probation Officer Stephen Sandford ("Officer Sandford"), and Yolla Fayad, a friend of Defendants' family. The R & R provides a detailed and thorough

4

summary of the witnesses' testimony. (*See* R & R at 4-9.) The Court assumes the parties' familiarity with the testimony and the underlying facts of this case. Accordingly, the Court will elaborate upon only those facts necessary to resolution of the government's objections.

After he was released from prison, Defendant met regularly with Probation to discuss the actions he was undertaking to fulfill the third special condition. (Tr. 6-9.) On June 10, 2011, Defendant reported to Officer Sandford that the victim-daughter was willing to return to the United States and would return no later than June 22, 2011. (Tr. 9-10.) Defendant had no reason to believe that his family was interfering with his efforts to bring P. to the United States and instructed them to comply with his instruction to return her to the United States. (Tr. 9-12, 52, 54.)

Yet, unbeknownst to Defendant, the victim-daughter was petitioning a Lebanese court to obtain an order prohibiting her return to the United States. (Tr. 62-63.) She appeared at a "secret hearing" on June 9, 2011. (Tr. 65-66.) She obtained a judgment from a Lebanese court prohibiting her from traveling outside of Lebanon without court approval until she reaches legal age.[2] (*See* Translated Lebanese Judgment dated June 23, 2011 ("Lebanese Judgment"), attached as Ex. 3 to Gov't Obj. at 4-5.)

Defendant testified that he first learned about the Lebanese Judgment two or three days before March 21, 2012. (Tr. 63.) Defendant testified that when he received the Lebanese Judgment, he consulted a Lebanese attorney to find out if it was possible to "get around the judgment" because he wanted P. to return to the United States. (Tr. 72.) He testified that the attorney advised him that the Lebanese Judgment would not be vacated unless Defendant and P. appeared in court, and P. requested the court to vacate the order to permit her to leave Lebanon.

---

[2] None of the parties have provided the Court with information as to the "legal age" in Lebanon; nonetheless, this issue is not necessary to resolution of the government's objections.

(*Id*.) Defendant had no telephone records, email exchanges, or other records to corroborate his testimony that he consulted with a Lebanese attorney. (Tr. 88-90.) Defendant testified that he never wrote to or otherwise attempted to contact the Lebanese courts to vacate the Lebanese Judgment or to inform them about the requirement that P. return to the United States. (Tr. 90.)

The Lebanese Judgment referred to an earlier order issued by the Ecclesiastical Court for the Greek Orthodox Church. (Ex. 3 at 1; Tr. 90.) That order, issued in 2008, granted Defendant's mother guardianship of P. and prohibited P. from travelling outside of Lebanon without her permission. (Ex. 3 at 1; Tr. 90.) Defendant testified that he knew about the Ecclesiastical Court's order, but never retained or consulted with counsel to vacate it. (Tr. 91.) When pressed as to whether he took any actions to overturn the order, Defendant conceded, "I missed this one. I didn't do it." (*Id*.)

Rather than discuss this development with Officer Sandford, Defendant withheld this information from him. He met with Officer Sandford within days of receiving a copy of the Lebanese Judgment, but said nothing about it. (Tr. 87.) He met several more times with Officer Sandford and never told him about it. (*Id*.) In fact, Defendant did not tell Officer Sandford about the orders until the date of the evidentiary hearing. (*Id*.) When pressed, Defendant stated that he kept this information from Officer Sandford "because I never gave up. I want my daughter [to] come back, judgment or not judgment, I want her to go back to the mother." (Tr. 87-88.) Defendant admitted that he never told Officer Sandford about consulting an attorney, despite being questioned at numerous meetings about his efforts to secure P.'s return to the United States. (Tr. 88.)

Finally, Defendant testified that P. spoke with the Lebanese police, telling them that she did not want to return to the United States. (Tr. 60-61.) The police did not press her further on

the issue. (*Id.*) Defendant further testified that he did not immediately tell Officer Sandford about the inaction of the Lebanese police; rather, he told Officer Sandford "after probably [a] long time." (Tr. 92.)

**C.     R & R**

The magistrate judge noted that "the court's role at this hearing is a narrow one: to determine whether the government has proved by a preponderance of the evidence that Defendant violated the special condition of his supervised release requiring him to 'facilitate the immediate and safe return' of his daughter to the United States." (R & R at 10.) Relying on a dictionary, the magistrate judge defined the term "facilitate" as "to 'make easy or easier, promote, help forward (an action, result, etc.).'" (*Id*. at 11.) The magistrate judge elaborated that "the test is whether [D]efendant facilitated or removed impediments to P.'s return to the United States, not whether he succeeded." (*Id*.) The magistrate judge found that:

> It is uncontested that Saliba, *inter alia*, (1) gave P.'s maternal grandfather and aunt permission to obtain a passport for P.; (2) authorized the Lebanese government and the United States Department of State to assist in bringing P. to the United States; and (3) asked a family friend who has known P. since she was a small child to contact P. and try to persuade her to come to the United States. Additionally, Saliba testified that he telephoned P. on numerous occasions and tried to convince her to return. Although Saliba did not press P. to return in every conversation, fearing that to do so would be counterproductive, he arranged for Fayad to continue those discussions with his daughter when he could not.

(*Id*. at 11-12.) The magistrate judge found that "under the commonly understood meaning of the word 'facilitate,' the actions described above, if taken by Saliba, did in fact facilitate P.'s return." (*Id*. at 12.)

With respect to Defendant's withholding from Probation the information about the Lebanese orders, the magistrate judge indicated that the "failure to report key facts to Probation

7

could have been grounds for a separately charged violation of defendant's supervised release," which "Probation chose not to bring." (R & R 13.) The magistrate judge found that "the government has not shown that the withholding of information, by itself, detracted from Saliba's efforts to facilitate the return of his daughter and thus triggered a violation of the special condition." (*Id*.)

The magistrate judge found that the government failed to prove a conspiracy between Defendant and his family in Lebanon to prevent P. from returning to the United States. (*Id*. at 13-16.) There was no direct evidence of such a conspiracy. (*Id*. at 14.) Similarly, the magistrate judge found the government's circumstantial proof—the chronology of events in June 2011 coupled with Defendant's lack of credibility—insufficient to establish the alleged conspiracy. (*Id*. at 14-15.)

Lastly, in a footnote, the magistrate judge disposed of the government's final argument—that Defendant violated the special condition by failing to contact the Lebanese courts to overturn or vacate the Lebanese orders. (*Id*. at 15-16 n.26.) The magistrate judge recognized that, pursuant to the special condition, Defendant was "required, if needed, to communicate with any Lebanese official or court and to express his willingness that the child return to the United States." (*Id*.) However, the magistrate judge found that "[D]efendant was not charged with violating the portion of the special condition concerning communicating with Lebanese officials and courts." (*Id*.) In any event, the magistrate judge found that Defendant had contacted an attorney to discuss the Lebanese Judgment and that the attorney advised Defendant that only P. could overturn it. (*Id*.)

### D. Objections

The government filed timely objections to the R & R. The government argues that the magistrate judge erred in finding that the government failed to establish Defendant's violation of the special condition by a preponderance of the evidence. (*See* Gov't Obj. at 22.) In particular, the government contends that Defendant "violated the third special condition because he withheld material information from the Probation Department, because he failed to communicate with Lebanese courts and police officials to express his willingness that the victim-daughter return to the United States, and because he eventually gave up and ceased attempting to facilitate the return of the victim-daughter." (*Id*.) The government contends that, whether viewed as individual violations or viewed collectively, Defendant's omissions constitute a violation of the third special condition; therefore, supervised release must be revoked. (*Id*.)

### E. The Parties

To date, P., the victim-daughter, remains in Lebanon, where she has lived apart from the victim-mother for over fifteen years. Defendant remains in the United States, subject to home confinement. The victim-mother remains in the United States, with little to no contact with P.

## STANDARD OF REVIEW

When a party objects to a report and recommendation, a district judge must make a *de novo* determination with respect to those portions of the report and recommendation to which the party objects. *See* Fed. R. Civ. P. 72(b)(3); *United States v. Male Juvenile*, 121 F. 3d 34, 38 (2d Cir. 1997). If, however, a party makes conclusory or general objections, or attempts to relitigate the party's original arguments, the court will review the report and recommendation for clear error. *See Robinson v. Superintendent, Green Haven Corr. Facility*, 2012 WL 123263, at *1 (E.D.N.Y. Jan. 17, 2012) (quoting *Walker v. Vaughan*, 216 F. Supp. 2d 290, 292 (S.D.N.Y.

2002)). The district court may then "accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3); *see also* 28 U.S.C. § 636(b)(1).

## DISCUSSION

### I. Burden of Proof

The magistrate judge correctly set forth the standard as to the government's burden of proof. (R & R at 9.) It is well settled that "r[e]vocation proceedings are not deemed part of a criminal prosecution, and, therefore, defendants in such proceedings are not entitled to 'the full panoply of rights' that criminal defendants generally enjoy." *United States v. Carthen*, 681 F. 3d 94, 99 (2d Cir. 2012) (quoting *Morrissey v. Brewer*, 408 U.S. 471, 480 (1972)), *cert. denied* __ U.S. __, 133 S. Ct. 837 (2013). At a violation of supervised release hearing, the government must prove the alleged violations of supervised release by a preponderance of the evidence. 18 U.S.C. § 3583(e)(3); Fed. R. Crim. P. 32.1(d); *see also Carthen*, 681 F. 3d at 99-100.

### II. Conspiracy

The government did not object to the magistrate judge's analysis regarding the purported conspiracy between Defendant and his family to prevent P.'s return to the United States. The magistrate judge correctly rejected this theory of the government's case. There was no direct proof and insufficient circumstantial proof of the conspiracy. (R & R at 14.) Accordingly, the Court adopts the portion of the R & R finding that the government failed to establish the purported conspiracy between Defendant and his family.

### III. Withholding of Information

The Court declines to adopt the R & R's strict reading of the VOSR Rpt. In the VOSR Rpt., Probation states that "[t]he offender violated the following Court ordered special condition

of supervision: '*(the offender) shall facilitate the immediate and safe return of [P.] to the United States.*'" (VOSR Rpt. at 4-6.) The Court agrees with the government that Probation's description of the violation was intended to paraphrase the third special condition and should not operate as a waiver for prosecution of the condition's other language. Moreover, the VOSR Rpt. is not a charging instrument, but rather is a report, and the Court is not prevented from considering the entire text of the third special condition *sua sponte*. *See United States v. Amatel*, 346 F. 3d 278, 280 (2d Cir. 2003) (noting that "the challenged instruments were not so much accusatory instruments as reports, by which 'a probation officer conveys information about the defendant to the sentencing court,'" and that "a sentence of supervised release established an 'ongoing relationship between the sentencing court and the defendant' . . . empower[ing] the court to initiate revocation proceedings *sua sponte*"). Accordingly, the Court has the authority to consider the entire text of the third special condition when ruling on the government's revocation motion.

The Court also declines to adopt the R & R's construction of the term "facilitate." The term "facilitate" does, as the magistrate judge defined it, mean to "make easy or easier, promote, help forward (an action, result, etc.)." (R & R at 11.) However, the third special condition provides specific guidance as to the meaning of the term "facilitate," setting forth a number of steps that the Defendant must take "[i]n connection with facilitating the return" of P. to the United States. (J. at 4.) The third condition was constructed to "hopefully deter [] Mr. Saliba from continuing to unlawfully retain the child after his release from prison" (Sentencing Tr. at 80), and this condition would be frustrated by defining the term "facilitate" without consideration of the specific obligations. Moreover, there is nothing unreasonable about interpreting the term in that manner. The third special condition was premised on the special condition at issue in

11

*United States v. Al Manware*, 08-CR-882(DGT), which survived appellate challenge. *See United States v. Al Manware*, 326 F. App'x 16, 18 (2d Cir. 2009) (explaining that a special condition of supervised release requiring defendant convicted of international parental kidnapping to "affirmatively assist in the return of his child to the United States" was not substantively unreasonable as there was no evidence that it was impossible for him to comply). Accordingly, the Court will consider the entire text of the third special condition in ruling on the government's motion for revocation and subsequently filed objections to the R & R.

After his release from prison, Defendant regularly met with Officer Sandford to discuss his facilitation of P.'s return to the United States. (Tr. 6-9.) They discussed, at length, Defendant's efforts to convince P. to return to the United States, including different approaches to persuade her. (Tr. 13.) These meetings with Officer Sandford were not voluntary; rather, Defendant was required to meet with Officer Sandford regularly and discuss his efforts to facilitate P.'s return. During these required discussions, Defendant failed to inform Officer Sandford of the Lebanese Judgment, the Ecclesiastical Order discussed in the Lebanese Judgment, and the involvement of the Lebanese police, all of which were crucial impediments to P.'s return. (Tr. 87-93.) The third special condition cannot be interpreted to foreclose Defendant's duty to contemporaneously report his knowledge of impediments to P.'s return as they arise. *Cf. United States v. Johnson*, 446 F. 3d 272, 280 (2d Cir. 2006) (explaining that conditions of supervised release "need not be cast in letters six feet high, or . . . describe every possible permutation, or . . . spell out every last, self-evident detail" (quotation marks omitted)). Thus, Defendant violated the Third Condition by withholding this crucial information from

Probation.³

In reaching this conclusion, the Court is mindful that a "district judge should normally not reject a proposed finding of a magistrate judge that rests on a credibility finding without having the witness testify before the judge." *Carrion v. Smith*, 549 F. 3d 583, 588 (2d Cir. 2008) (citation and quotation marks omitted); *see also Grassia v. Scully*, 892 F. 2d 16, 20 (2d Cir. 1989) ("[T]he district judge should not enter an order inconsistent with the credibility choices made by the magistrate without personally hearing the live testimony of the witnesses whose testimony is determinative." (citation omitted)). However, the Court finds that the Defendant has violated the special condition without the necessity of considering Defendant's credibility. Defendant's admissions plainly indicate that he failed to inform Officer Sandford of the Lebanese Judgment, the order of the Ecclesiastical Court, and the involvement of the Lebanese police and had no reasonable justification for his failure to do so. (Tr. 63, 86-88, 91, 93.)

The consequences of Defendant's withholding of this key information are grave. First, he deprived the victim-mother, who was unaware of the Lebanese court proceedings, of the opportunity to retain counsel and take a position in those proceedings. Second, had he informed Officer Sandford, Officer Sandford could have advised Defendant and assisted him in taking a more aggressive position with respect to the proceedings. The Lebanese Judgment is permanent unless P. returns to court expressing a willingness to return to the United States. Finally, withholding this information deprived the United States of the opportunity to pursue diplomatic and legal measures to facilitate P.'s return to the United States.

**IV.  Failure to Contact Lebanese Officials**

The third special condition imposes a duty "to communicate with any Lebanese official

---

³ Whether Probation could have charged Defendant separately for withholding the information is irrelevant. An individual is not "facilitating" an action if the individual ignores impediments to that action or fails to seek help to remove impediments to that desired (or in this case, required) action.

or court and to express his willingness that [P.] return to the United States." (J. at 4.) As set forth above, the entire text of the third special condition, including this term, is properly before the Court for consideration of Defendant's violation. This term clearly requires Defendant to communicate with any Lebanese officials or courts to assist in the removal of any impediments to P.'s return to the United States. To hold otherwise would render this term meaningless.

Defendant testified that he sought the advice of an attorney regarding the Lebanese Judgment. (Tr. 88.) Defendant never told Officer Sandford about this purported communication and was unable to provide any documentation to substantiate his testimony. (Tr. 88-90.) Assuming Defendant did contact an attorney, his effort was insufficient to demonstrate compliance with the special condition. The condition requires him to contact Lebanese officials or courts directly. He admitted that he made no efforts to contact Lebanese officials or courts to oppose either the Lebanese Judgment or the order of the Ecclesiastical Court. (Tr. 90.) Defendant's failure to take any action is different from a hypothetical situation in which Defendant contacted the courts, aggressively pursued a course of action, but ultimately was unsuccessful. The former situation is a violation of this term of the third special condition, whereas the latter is not. Moreover, it should have been abundantly clear to Defendant that his signature on the affidavit would not, on its own, effectuate P.'s return. He had a duty to contact Lebanese officials and courts to express his desire to have P. return to the United States, a duty that remained in place after he signed the affidavit. This duty was particularly important because the Lebanese judgment was issued after or around the same time that Defendant signed the affidavit.

## V. Abandoning Discussions with P.

The government asserts that Defendant violated the third special condition by abandoning his efforts to persuade P. to return to the United States. (Gov't Obj. at 31-34.) The Court declines to address this issue as the government has established by a preponderance of the evidence other violations of the third special condition and resolution of this final issue would involve credibility determinations

## CONCLUSION

After conducting a *de novo* review of the portions of the R & R to which the government objects, the R & R is adopted in part and rejected in part. The Court adopts the R & R to the extent that the Court concurs with the finding of the magistrate judge that the government failed to establish by a preponderance of the evidence that there was a conspiracy between Defendant and his family to prevent the victim-daughter's return to the United States. However, the R & R is rejected with respect to the magistrate judge's analysis and interpretation of the third Special Condition of Supervised Release and his conclusion that Defendant did not violate said condition as discussed in this opinion. Accordingly, Defendant's supervised release is revoked. A separate scheduling Order for sentencing shall issue.

SO ORDERED.

Dated: Brooklyn, New York
March 5, 2015

/s/
DORA L. IRIZARRY
United States District Judge